UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL NO. 04-65-DCR
CIVIL NO. 08-7015-DCR

UNITED STATES OF AMERICA                                                    PLAINTIFF

VS:                                    RECOMMENDED DISPOSITION

JOHNNY E. PINGLETON                                                         DEFENDANT

\* \* \* \* \*

The Court considers a § 2255 motion filed by *pro se*[1] Defendant Johnny E. Pingleton, on referral from the District Judge. *See* DE #206. A jury convicted Pingleton of conspiring to manufacture 50+ grams of meth (21 U.S.C. § 846); attempting to manufacture 50+ grams of meth (§ 846); using a minor to commit a drug offense (21 U.S.C. § 861(a)(1)); and possessing pseudoephedrine for manufacturing meth (21 U.S.C. § 841(c)(2)). *See* DE #151 (Amended Judgment). Pingleton received a 408 month sentence and appealed, but the Sixth Circuit affirmed the conviction. *See United States v. Pingleton*, 216 F.App'x 526, 530 (6th Cir. 2007). The Supreme Court subsequently denied Pingleton's petition for writ of certiorari. *See Pingleton v. United States*, 127 S.Ct. 2447 (2007).

---

[1] *Pro se* petitions receive a comparatively lenient construction by the Court. *See Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (holding that "allegations of a *pro se* habeas petition, 'though vague and conclusory, are entitled to a liberal construction'" including "active interpretation" toward encompassing an allegation stating "federal relief").

The § 2255 motion followed, mostly reasserting the same claims considered and rejected by the Sixth Circuit. Absent "highly exceptional circumstances," defendants generally may not "relitigate" issues adversely decided on appeal. *See, e.g., Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999). The United States thus moves for dismissal. *See* DE #211. For the reasons that follow, the Court recommends that the District Court DENY Pingleton's § 2255 motion.

\* \* \*

The record shows that in 2003 Pingleton and Timothy Harding began a meth manufacturing conspiracy. In exchange for a portion of the drugs produced, Harding allowed Pingleton to use a barn on Harding's property as a drug laboratory. In 2004, Kentucky police apprehended Pingleton in possession of meth. Pingleton informed investigators that he recently manufactured meth with Harding at Harding's residence/barn. Police ultimately released Pingleton because he promised to notify authorities when Harding next manufactured drugs. *See Pingleton*, 216 F.App'x at 527.

Shortly thereafter, local police visited Harding's residence to serve a summons for Harding. Lisa Witt allowed authorities to search for him, but Harding was not present. The officers interviewed and arrested Witt. Police also found Harding's minor son exiting the barn. Harding's son subsequently informed police that Pingleton had offered him $50 to "pop out" pseudoephedrine pills from blister packs.[2] Police arrested Harding days after the search, but Harding subsequently obtained release. Harding, Witt, Satica Vance, and John Rodefer then participated in a multi-day spree purchasing and shoplifting pseudoephedrine from stores in Kentucky, Ohio, and Indiana. Ohio authorities eventually stopped the group's van and arrested all four individuals. *See id.*

---

[2] Harding actually paid his son the money.

A grand jury in the Eastern District of Kentucky indicted Harding, Witt, and Rodefer (but not Pingleton) for conspiracy to manufacture meth, among other offenses.  *See* DE #9.  Harding and Witt pled guilty and agreed to cooperate.  *See* DE #37 (Witt Plea Agreement); #40 (Harding Plea Agreement).  The grand jury then returned a superseding indictment alleging, in relevant part, that "Johnny E. Pingleton and John E. Rodefer did conspire" to manufacture meth.  *See* DE #43.  The superseding indictment also contained a second count against Rodefer (carried over from the original indictment) based on the shoplifting spree.  *See id.*  A second superseding indictment later added three substantive charges against Pingleton (but not Rodefer) for attempting to manufacture meth; using a minor to attempt to manufacture meth; and possessing pseudoephedrine for manufacturing meth.  *See* DE #68.  A jury convicted Pingleton on all four counts, but acquitted Rodefer.  *See* DE #109 (Pingleton Jury Verdict); #108 (Rodefer Jury Verdict).

Pingleton appealed, asserting the following claims: the "government failed to prove that pseudoephedrine is a 'list I chemical'"; the conspiracy evidence introduced at trial caused a "constructive amendment" of count 1 of the indictment; the "government's witnesses were not credible"; Pingleton's conviction and Rodefer's acquittal constituted "inconsistent verdicts"; and the evidence on the allegedly void conspiracy count "prejudiced" Pingleton on the three substantive counts.  The Sixth Circuit rejected each argument.  *See Pingleton*, 216 F.App'x at 528-30.

The § 2255 motion features mostly the same arguments earlier raised on appeal.  The "constructive amendment" claim and Pingleton's last argument, alleging "prejudice," are no different from corresponding arguments in Pingleton's § 2255 motion.  Absent "highly exceptional circumstances," § 2255 motions may not "relitigate" issues raised and decided adversely on appeal. *See Jones*, 178 F.3d at 796.  Pingleton generally argues that barring further litigation would be

3

"unfair" or "unjust." *See* DE #214. He also speculates that a new judge might rule differently. *See id*. Plainly, Pingleton's generic arguments do not provide proper legal support or establish "highly exceptional circumstances." *See Jones*, 178 F.3d at 796 (explaining that "highly exceptional circumstances" might include an "intervening change in the law"). As it concerns the "constructive amendment" claim and the "prejudice" claim, the Court thus finds that collateral review would be inappropriate under *Jones*. *See id*.

The other two arguments alleged in Pingleton's § 2255 motion vary slightly from parallel claims considered by the Sixth Circuit. The § 2255 motion alleges "inconsistent verdicts" because "Rodefer's conspiracy acquittal is inconsistent with [Pingleton's]." *See* DE #206 (§ 2255 Application Ground Three). On appeal, Pingleton generally complained that "he was convicted while Rodefer was acquitted." The Sixth Circuit observed:

> But upon closer inspection, Pingleton does not complain that Rodefer's conspiracy acquittal is inconsistent with his conspiracy conviction; instead, he complains only of prejudice "as to Counts II, III, and IV." There is nothing logically inconsistent in the conclusion that Pingleton committed several substantive offenses but Rodefer did not criminally conspire with anyone.

*See Pingleton*, 216 F.App'x at 530. Clearly, the § 2255 motion alleges the "inconsistent verdict" claim that Pingleton failed to articulate fully on appeal.

To assert a claim not properly raised on direct review, a defendant generally must show cause for the default and prejudice, or demonstrate actual innocence. *See Bousley v. United States*, 118 S.Ct. 1604, 1611 (1998). Pingleton has not directly advocated or established either exception to the procedure default rule. The United States, however, also has not raised the argument. Because Pingleton never received notice or an opportunity to respond, the Court will not apply the

4

doctrine *sua sponte* or dismiss the claim on that basis. *See Oaks v. United States*, 400 F.3d 92, 96-99 (1st Cir. 2005).

On the merits, the "inconsistent verdict" claim plainly fails. At one time, the "rule of consistency" required: "[W]here all possible co-conspirators are tried together, and all but one are acquitted, the remaining conspirator's conviction must be reversed for lack of sufficient evidence." *See United States v. Crayton*, 357 F.3d 560, 564 (6th Cir. 2004). As the Sixth Circuit further observed in *Crayton*, however, the "Supreme Court's decision in *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed. 461 (1984), rendered the so-called 'rule of inconsistency' no longer good law." *See id*. Based on *Powell*, almost every circuit since *Powell* has recognized that the "acquittal of all but one co-conspirator during the same trial does not necessarily indicate that the jury found no agreement to act." *See id*. at 565 (collecting cases). Rather, potential "inconsistencies may be the product of jury lenity." *See id*. at 566. In addition, courts can protect against jury error by independently reviewing whether the evidence was sufficient. *See id*. at 566-67. Any categorical prohibition against inconsistent jury verdicts in the conspiracy context thus no longer applies.

Alternatively, the Sixth Circuit remarked in *Crayton*:

> [A]n individual's conviction for conspiracy may stand, despite acquittal of other alleged coconspirators, when the indictment refers to unknown or unnamed conspirators and there is sufficient evidence to show the existence of a conspiracy between the convicted defendant and these other conspirators.

*See id*. at 567. Here, the indictment charged that "Johnny E. Pingleton and John E. Rodefer did conspire to knowingly and intentionally manufacture fifty grams or more of methamphetamine[.]" *See* DE #68. On appeal, Pingleton argued that the indictment's language hinged on and required

5

proof of a conspiracy exclusively between himself and Rodefer,[3] but the Sixth Circuit held that "the words 'did conspire' need not be read restrictively to exclude other actors from the conspiracy." *See Pingleton*, 216 F.App'x at 529. Indeed, the Sixth Circuit held, "[T]he indictment should be read to charge a conspiracy involving two *or more* persons." *See id*.

As such, the indictment encompassed other unnamed conspirators, namely Harding. Furthermore, although Pingleton disputes that he conspired with Rodefer, Pingleton admits that the evidence "was sufficient enough for the jury to find guilt in the conspiracy." *See* DE #206 (§ 2255 Application Ground One). Because, per the Sixth Circuit, the indictment fairly included other unnamed conspirators, and because Pingleton admits that there was sufficient evidence of a conspiracy, the inconsistent verdict claim would have failed even if the "rule of consistency" were still good law.

The last § 2255 claim alleges: "Government witnesses should not be considered credible, and perjury was committed." *See* DE #206 (§ 2255 Application Ground Four). On appeal, Pingleton similarly complained that the "government's witnesses were not credible." *See Pingleton*, 216 F.App'x at 530. The Sixth Circuit construed the argument as challenging the sufficiency of the evidence, but rejected the claim because "an appellate court may not consider the credibility of witnesses." *See id*. In addition to foreclosure by *Jones*, because the jury properly considers witness credibility, the issue also is not appropriate for collateral review. *See United States v. Walker*, 638 F.2d 1147, 1149 (8th Cir. 1981).

---

[3] This was the basis for Pingleton's "constructive amendment" claim. Because the United States introduced evidence at trial of a conspiracy involving persons other than Rodefer, Pingleton argued that the Government constructively amended the charge.

6

Unlike the appeal, the § 2255 motion by Pingleton further asserts that "perjury was committed." To obtain relief based on perjured testimony, a defendant ordinarily must show that: 1) the statements were "actually false"; 2) the statements were "material"; and 3) the "prosecution knew" that the statements were "false." *See United States v. Pierce*, 62 F.3d 818, 834 (6th Cir. 1995); *see also Fischl v. United States*, 1993 WL 432375, at *9 (6th Cir. Oct. 25, 1993)(applying test in § 2255 context). Pingleton asserts the following complaints:

> - On the night of the raid, Harding testified that Pingleton "dropped off a trash bag of pseudoephedrine pills and left." Witt testified that Pingleton was at Harding's residence, left, came back, and then fled from a rear window when police arrived. Pingleton asserts that Harding actually fled out the back window.
>
> - Harding testified that he was not involved in cooking meth until Pingleton "came along." According to Pingleton, the evidence showed that the conspiracy pre-dated his involvement.
>
> - Harding's son "made the bogus accusation that I offered him $50 to pop pills from sudafed packs."
>
> - Harding's father inaccurately stated that Pingleton "would claim all the stuff in the barn."

*See* DE #206 (§ 2255 Application Ground Four). Pingleton does not provide citations to the record or identify specific support. He also does not assess the testimony's impact, relative to the other condemnatory evidence. Plainly, the summary complaints about the testimony by Pingleton, and his cursory analysis, cannot adequately establish that the statements were "actually false" or "material." *See Pierce*, 62 F.3d at 834. The perjured testimony claim thus fails.

7

In sum, the Court recommends that the District Court DENY Pingleton's § 2255 motion. Pingleton has not shown "highly exceptional circumstances" that would allow relitigation of issues decided adversely on appeal. To the extent that the relitigation bar does not apply to the "inconsistent verdict" and "perjury" claims, the Court finds that those two claims have no legal or factual support.

The Court also recommends that the District Court refuse to certify any issues for appeal, should Pingleton request such certification. A certificate of appealability should issue only when "jurists of reason" would find the Court's decision "debatable." *See Slack v. McDaniel*, 120 S.Ct. 1595, 1604 (2000). Here, the determination by the Court is not fairly "debatable." *See id.*

\* \* \*

For the reasons stated, the Court RECOMMENDS that:

1) the District Court DENY and DISMISS with prejudice Pingleton's motion for § 2255 relief, *see* DE #206; and

2) the District Court refuse a certificate of appealability as to all issues, should Pingleton request issuance of a COA.  *See* 28 U.S.C. § 2253.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b)(1), Fed. R. Civ. P. 72(b), and local rule, within ten days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. *See also* Fed. R. Crim. P. 59.

This the 8th day of August, 2008.



Signed By:
*Robert E. Wier*  REW
**United States Magistrate Judge**

Case: 6:04-cr-00065-DCR-CJS   Doc #: 220   Filed: 08/08/08   Page: 9 of 9 - Page ID#: 2141

9